IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**LOVELL TRAVIS and**
**SHIRLEY TRAVIS,**

        Plaintiffs,

v.                                                           **Civil Action No. 1:12-CV-89**
                                                            **(BAILEY)**

**JP MORGAN CHASE BANK, N.A., and**
**BANK OF AMERICA, N.A.,**

        Defendants.

### MEMORANDUM OPINION AND ORDER

        Pending before this Court are defendant JP Morgan Chase Bank, N.A.'s Partial Motion to Dismiss [Doc. 8], filed May 31, 2012; defendant Bank of America, N.A.'s Motion to Dismiss [Doc. 11], filed June 26, 2012; and plaintiffs Lovell Travis' and Shirley Travis' Motion for Leave to Amend Pleadings [Doc. 17], filed July 16, 2012. These motions have been briefed and are now ripe for decision. Having reviewed the record and considered the arguments of the parties, this Court concludes that the defendants' motions should be **GRANTED** and the plaintiffs' motion should be **DENIED**.

### BACKGROUND

**I.**      **Factual Allegations**

        Pursuant to a Note dated December 11, 2000, plaintiffs Lovell and Shirley Travis promised to pay Alliance Funding ("Alliance"), a division of Superior Bank, F.S.B., $59,300.00 not later than January 1, 2031, in return for a loan on their Preston County,

West Virginia, home. Specifically, the plaintiffs promised to pay a monthly principal and interest payment of $632.88, beginning on February 1, 2001. To secure their promise to pay, the plaintiffs granted Alliance a security interest in their home pursuant to a Deed of Trust also dated December 11, 2000. Subsequent to origination, Alliance transferred its servicing rights to Electronic Mortgage Corporation ("EMC").

In July 2009, the plaintiffs fell behind on their payments due to loss of employment, causing the plaintiffs to seek a loan modification. On July 27, 2009, the plaintiffs entered into a loan modification agreement with EMC which brought their mortgage current. The plaintiffs thereafter made payments pursuant to the loan modification until "the Defendant's servicer" began rejecting and returning payments on October 30, 2010. (See [Doc.3-1] at ¶ 6). After discovering that EMC had transferred its servicing rights to JP Morgan Chase Bank, N.A. ("Chase"), the plaintiffs contacted EMC and Chase seeking recognition and performance of the loan modification agreement.

By letter dated November 7, 2011, Seneca Trustees, Inc. ("Seneca") notified the plaintiffs that it had been asked as trustee to foreclose on their home. Seneca explained that the Chase-provided reinstatement amount was $68,493.82. Seneca further advised that Bank of America, N.A. ("BofA") was the current holder of the plaintiffs' Note as successor to LaSalle Bank, N.A. The plaintiffs responded by letter dated November 14, 2011, requesting a loan modification. By letter dated November 22, 2011, Seneca replied that any applications for a loan modification should be directed to Chase. The plaintiffs subsequently applied for a loan modification from Chase and was advised that their application was being processed. Despite this representation, Seneca notified the plaintiffs on February 17, 2012, that Chase had instructed it to foreclose. By separate

correspondence dated March 8, 2012, Seneca notified the plaintiffs that Chase and BofA had instructed it to conduct a foreclosure sale, which it scheduled for March 23, 2012. Upon learning of this action, however, Seneca indefinitely postponed the foreclosure sale.

## II.      Procedural History

On March 14, 2012, the plaintiffs sued BofA, Chase, and Seneca in the Circuit Court of Preston County, West Virginia.  The plaintiffs filed the challenged Amended Complaint [Doc. 3-1] in state court on April 23, 2012, removing Seneca and making minor changes to the factual allegations.  The Amended Complaint contains a number of causes of action against BofA and Chase arising from the failure of those defendants to honor the July 27, 2009, loan modification agreement.  These causes of action, which are not delineated into counts, include claims for unfair and deceptive trade practices prohibited by the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W.Va. Code § 46A-1-1, *et seq.*, common law fraud, emotional distress, and breach of contract.  As relief, the plaintiffs seek, *inter alia*, an award of punitive damages and a declaration that the Note and Deed of Trust are void "as being fraudulent."  ([Doc. 3-1] at 7).

On May 23, 2012, Chase removed the above-styled action to this Court without the consent of BofA, as is proper because BofA had not been served at the time of removal. See 28 U.S.C. § 1446(b)(2)(A).  The asserted basis for jurisdiction is diversity jurisdiction pursuant to 28 U.S.C. § 1332.

On May 31, 2012, Chase filed the instant Partial Motion to Dismiss [Doc. 8] pursuant to Federal Rule of Civil Procedure 12(b)(6).  First, Chase asserts that punitive damages are not recoverable pursuant to the WVCCPA as a matter of law and that the plaintiffs have otherwise failed to plead facts sufficient to support a common law award of punitive

3

damages. Second, Chase argues that the plaintiffs have failed to state a claim for either intentional infliction of emotional distress or negligent infliction of emotional distress. Finally, Chase contends that the plaintiffs have failed to state a claim for fraud that would support a declaration that their Note and Deed of Trust are void.

On June 26, 2012, BofA noted its special appearance [Doc. 10] and filed the instant Motion to Dismiss [Doc. 11] pursuant to Rule 12(b)(6) and Rule 12(b)(5). First, BofA argues that the allegation that it was the holder which directed foreclosure is insufficient to support a claim against it. Second, BofA alleges that it has still not been properly served in this action and, for that alternative reason, should be dismissed.

On July 16, 2012, the plaintiffs filed a combined Response [Doc. 16] to the defendants' motions to dismiss, while concurrently filing their instant Motion for Leave to Amend Pleadings [Doc. 17] seeking to file a Second Amended Complaint. In opposing the motions to dismiss, the plaintiffs assert that their proposed Second Amended Complaint will "clearly satisfy the Defendants' confusion," while contending alternatively that they "believe the pleadings when read in a light most favorable to [them] . . . [contain] sufficient facts to support [their] request for denial" of both motions. ([Doc. 16] at 2). With specific reference to BofA, the plaintiffs argue that BofA can be held liable based upon its principal-agent relationship with Chase and that BofA's service arguments are premature to the extent that the plaintiffs still have time to perfect service. The plaintiffs failed to attach a proposed Second Amended Complaint to their motion for leave.

On July 20, 2012, Chase replied in support of its motion to dismiss and opposed the plaintiffs' motion for leave [Docs. 19 & 20]. Specifically, Chase reasserts its previous arguments in support of partial dismissal and argues that the plaintiffs' proposed pleading

4

would be futile.

On July 23, 2012, BofA replied in support of its motion to dismiss, supplementing its previous arguments in support of dismissal [Doc. 23].  In particular, BofA argues that there is no presumption that Chase acted as its agent and that the plaintiffs have otherwise failed to adequately plead the existence of such a relationship.

On July 25, 2012, the plaintiffs filed their proposed Second Amended Complaint [Doc. 24].  In addition to adding the allegation multiple times that the defendants "never intended to honor" the loan modification agreement, the plaintiffs seek to buttress their claim for emotional distress by alleging that the defendants' failure to honor the modification agreement was "intolerable, atrocious, and outrageous" and caused emotional distress "no reasonable person could be expected to endure."  (See [Doc. 24] at ¶¶ 15, 24, & 25).

On July 30, 2012, BofA noted its opposition to the plaintiffs' proposed Second Amended Complaint as futile, arguing that the "proposed pleading simply would add more conclusory allegations and fraud buzzwords that do not satisfy the heightened pleading requirements" of Rule 9(b).  ([Doc. 27] at 4).

## DISCUSSION

### I.     Rule 12(b)(6) Standard

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true.  ***Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.***, 910 F.2d 139, 143 (4th Cir. 1990).  A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face."  ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007) (emphasis added).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" ***In re Mills***, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." ***Id.*** (internal quotations and citations omitted). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

## II. Analysis

### A. Chase Partial Motion to Dismiss

Chase asks this Court to dismiss those parts of the Amended Complaint in which the plaintiffs seek punitive damages, damages for emotional distress, and a declaration that the Note and Deed of Trust are void as fraudulent. The Court will consider each request in turn.

#### 1. Punitive Damages

First, Chase argues that the plaintiffs are precluded as a matter of law from recovering punitive damages for their WVCCPA claims. This Court agrees.

As this Court has previously held, "the penalty provision of the WVCCPA has been interpreted to preclude the award of punitive damages." ***Tucker v. Navy Federal Credit***

*Union*, 2011 WL 6219852, *9 (N.D. W.Va. Dec. 14, 2011) (citing *One Valley Bank of Oak Hill, Inc. v. Bolen*, 188 W.Va. 687, 692, 425 S.E.2d 829, 834 (1992) ("[P]unitive damages are not available under the fraud or unconscionable conduct provisions of [the WVCCPA].")).  In Paragraph 4 of their *ad damnum* clause, the plaintiffs seek an award of "punitive damages under the [WVCCPA]."  ([Doc. 3-1] at 7).  The rationale articulated in *Tucker* and *Bolen*, however, applies with equal force here to preclude the plaintiffs from seeking punitive damages pursuant to the WVCCPA in either their Amended Complaint or their proposed Second Amended Complaint.

Second, Chase argues that the plaintiffs have failed to plead facts which would support an award of punitive damages for any of their common law tort claims.  This Court agrees.

To state a plausible claim for punitive damages, a plaintiff must plead facts to support a finding that the alleged tortfeasor acted with "gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others . . .."  Syl. pt. 4 *Alkire v. First Nat. Bank of Parsons*, 197 W.Va. 122, 475 S.E.2d 122 (1996).  An award of punitive damages "is the exception, not the rule, as the level of bad conduct on the part of a defendant must be very high in order to meet the punitive standard."  *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W.Va. 482, 577, 294 S.E.2d 815, 910 (2010).  Here, neither the Amended Complaint nor the proposed Second Amended Complaint contain allegations of bad conduct of a sufficiently high level to meet the punitive standard.  The Amended Complaint alleges at most that the defendants acted fraudulently.  The conclusory allegation added to the proposed Second Amended

7

Complaint that the defendants "knew or should have known that their actions . . . we so *reckless* that emotional distress would and did result" is inadequate to raise the level of alleged conduct to the punitive standard. (See [Doc. 24] at ¶ 25) (emphasis added).

Accordingly, the plaintiffs' claim for punitive damages should be **DISMISSED**.

### 2.     Emotional Distress

In West Virginia, a plaintiff may recover damages for emotional distress pursuant to one of two distinct causes of action, namely: (1) intentional infliction of emotional distress or (2) negligent infliction of emotional distress. Because the plaintiffs are unclear as to which cause of action they assert, this Court will consider the plausibility of each in turn.

#### i.     Intentional Infliction of Emotional Distress

"In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." Syl. pt. 7, **Hatfield v. Health Mgmt. Assocs. of W.Va., Inc.**, 223 W.Va. 259, 672 S.E.2d 395 (2008) (quoting Syl. pt. 3, **Travis v. Alcon Labs., Inc.**, 202 W.Va. 369, 504 S.E.2d 419 (1998)).

Even assuming the plaintiffs have adequately pled the first three elements of this cause of action, this Court concludes that neither the Amended Complaint nor the proposed Second Amended Complaint contain sufficient factual allegations to plead the fourth element, i.e., that the plaintiffs' emotional distress was "so severe that no reasonable person could be expected to endure it."

The plaintiffs' sole allegation with respect to emotional distress in the Amended Complaint is: "As a result of each of the Defendants' actions your Plaintiffs have suffered *severe* emotional and psychological pain and stress at losing their home of over 11 years." ([Doc. 3-1] at ¶ 30) (emphasis added).  In the proposed Second Amended Complaint, the plaintiffs allege that "[e]ach of the Defendants knew or should have known that their actions . . . were so reckless that emotional distress would and did result there from [sic], *that no reasonable person could be expected to endure*." ([Doc. 24] at ¶ 25) (emphasis added). However, as stated above, "[a] pleading that offers [these types of] labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." ***Iqbal***, 556 U.S. at 678.

Accordingly, the plaintiffs' intentional infliction of emotional distress claim should be **DISMISSED**.

### ii.     Negligent Infliction of Emotional Distress

To date, the Supreme Court of Appeals of West Virginia has announced two separate tests for negligent infliction of emotional distress claims.  As explained below, neither the Amended Complaint nor the proposed Second Amended Complaint contain factual allegations sufficient to satisfy either test.

9

In ***Heldreth v. Marrs***, 188 W.Va. 481, 485, 425 S.E.2d 157, 161 (1992), the Supreme Court of Appeals held that "[a] defendant may be held liable for negligently causing a plaintiff to experience serious emotional distress, ***after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct***, even though such distress did not result in physical injury, if the serious emotional distress was reasonably foreseeable." (Emphasis added). Here, the plaintiffs do not allege that either of their alleged emotional distress resulted from witnesses a person closely related to them suffer critical injury or death as a result of the defendants' allegedly negligent conduct.  As such, the plaintiffs have failed to state a claim for negligent infliction of emotional distress pursuant to the ***Heldreth*** test.

In ***Marlin v. Bill Rich Constr., Inc.***, 198 W.Va. 635, 638, 482 S.E.2d 620, 653 (1996), the Supreme Court of Appeals permitted workers exposed to asbestos to recover for negligent infliction of emotional distress, even when the workers had not developed symptoms of asbestosis:

> In order to recover for negligent infliction of emotional distress ***based upon the fear of contracting a disease***, a plaintiff must prove that he or she was actually exposed to the disease by the negligent conduct of the defendant, that his or her serious emotional distress was reasonably foreseeable, and that he or she actually suffered serious emotional distress as a direct result of the exposure.

(Emphasis added).  This expansion of ***Heldreth*** appears to be limited to cases involving a fear of contracting a disease caused by a defendant's negligent conduct.  *See* ***Peters v. Small***, 413 F.Supp.2d 760, 762 (S.D. W.Va. 2006) (characterizing ***Marlin*** as a "narrow

10

holding, limited to plaintiffs exposed to a disease"). This case, which obviously does not involve allegations concerning a fear of contracting a disease, falls well outside the limited holding of **Marlin**.[1]

Accordingly, the plaintiffs' negligent infliction of emotional distress claim should be **DISMISSED**.

### 3. Validity of Note and Deed of Trust

Chase argues that the plaintiffs have failed to plead entitlement to a declaration that the Note and Deed of Trust are void as fraudulent. This Court agrees.

To the extent that the plaintiffs seek cancellation of their secured debt, their request is explicitly foreclosed by the WVCCPA. See W.Va. Code § 46A-5-105 (empowering a court to cancel unsecured debt only). To the extent that the plaintiffs seek a declaration that their Note and Deed of Trust are unenforceable because the agreements are unconscionable or were induced by unconscionable conduct, the plaintiffs have failed to allege that either agreement was induced by unconscionable conduct or that either agreement contains an unconscionable term. In fact, the gravamen of both the Amended Complaint and the proposed Second Amended Complaint is that the defendants failed to honor a loan modification agreement. Neither pleading provides any details concerning the closing or the terms of the loan beyond the principal amount and term.

---

[1] In addition, this Court notes that the plaintiffs have failed to plead the existence of a special relationship with Chase from which a duty would arise to support a claim based in negligence because they fail to allege that Chase performed any services not normally provided by a servicer to a borrower. See **Koontz v. Wells Fargo, N.A.**, 2011 WL 1297519, *11 (S.D. W.Va. Mar. 31, 2011) (citing **Warden v. PHH Mortgage Corp.**, 2010 WL 3720128, *9 (N.D. W.Va. Sept. 16, 2010)).

Accordingly, the plaintiffs' claim for a declaration that their Note and Deed of Trust are void as fraudulent should be **DISMISSED**.

**B.     BofA Motion to Dismiss**

BofA contends that it should be dismissed from this action because the allegation that it was the holder which directed foreclosure is insufficient to support a claim against it, especially because there is no presumption that Chase acted as its agent and because the plaintiffs have otherwise failed to adequately plead the existence of such a relationship. This Court agrees.

As an initial matter, this Court agrees that because no claim is specifically directed against BofA, the plaintiffs may only proceed against BofA based upon a theory that Chase acted as BofA's agent. In this regard, the Supreme Court of Appeals of West Virginia recently reaffirmed the long-standing principle that "[t]he law indulges no presumption that an agency exists; on the contrary a person is legally presumed to be acting for himself and not as the agent of another person; and the burden of proving an agency rests upon him who alleges the existence of the agency." Syl. pt. 4, *All Med, LLC v. Randolph Eng'g Co.*, 723 S.E.2d 864 (2012) (quoting Syl. pt. 1, *Lohr Funeral Home, Inc. v. Hess & Eisenhardt*, 152 W.Va. 723, 166 S.E.2d 141 (1969)). "One of the essential elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent." Syl. pt. 2, *All Med, LLC* (quoting Syl. pt. 3, *Teter v. Old Colony Co.*, 190 W.Va. 711, 441 S.E.2d 728 (1994)).

Here, however, neither the Amended Complaint nor the proposed Second Amended Complaint contain factual allegations sufficient to plead the existence of a principal-agent

relationship because neither pleading alleges that BofA exerted control over the activities of Chase. See Syl. pt. 5, **Paxton v. Crabtree**, 184 W.Va. 237, 400 S.E.2d 245 (1990) (recognizing the element of control as "determinative").

Accordingly, BofA should be **DISMISSED** from this action because the plaintiffs have failed to state a claim against it upon which relief can be granted.

### C. Plaintiffs' Motion for Leave

As noted above, the plaintiffs moved this Court for leave to file their proposed Second Amended Complaint during the briefing of the defendants' motions to dismiss the Amended Complaint. In opposing leave, the defendants argue that the plaintiffs should be denied leave because their proposed amendment is futile. This Court agrees.

"A trial court is permitted to deny leave to amend a complaint if the proposed amendment would be futile. An amendment would be futile if the complaint, as amended, would not withstand a motion to dismiss. **Elrod v. Busch Entertainment Corp.**, 2012 WL 2402668, *1 (4th Cir. June 27, 2012) (internal citations omitted). In analyzing the defendants' motions to dismiss, this Court considered the plaintiffs' proposed Second Amended Complaint, finding nevertheless that the motions should be granted. As such, the plaintiffs' proposed amendment is futile.

Accordingly, the plaintiffs' motion for leave should be **DENIED** as futile.

### CONCLUSION

For the foregoing reasons, this Court concludes that Chase's Partial Motion to Dismiss **[Doc. 8]** and BofA's Motion to Dismiss **[Doc. 11]** should be, and hereby are, **GRANTED**. Accordingly, BofA is hereby **DISMISSED**. In addition, this Court concludes

that the plaintiffs' Motion for Leave to Amend Pleadings **[Doc. 17]** should be, and hereby is, **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein.

**DATED:** August 6, 2012.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE